UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
01 MAY -8 PM 12: 15
N.D. OF ALABAMA

| | |
|---|---|
| PATRICIA DUCKETT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>QUORUM HEALTH GROUP, INC., )<br>CONTINENTAL CASUALTY )<br>COMPANY, )<br>)<br>Defendants. ) | CV-99-PT-0464-M<br><br>ENTERED<br>MAY 8 2001 |

### MEMORANDUM OPINION

This cause comes to be considered on the Report and Recommendation of the magistrate judge, filed on March 30, 2001, and the objections of the plaintiff and defendants thereto.

The defendants acknowledge that the magistrate judge "correctly determined that heightened scrutiny under the arbitrary and capricious standard of review applies in this case. . . ." The plaintiff argues that the de novo standard applies because Quorum never amended the [Plan] to include the long term disability benefits policy.

This court agrees that the magistrate judge correctly applied the arbitrary and capricious standard and further agrees that he appropriately decided the merits of the case as to the benefits claim. This court, having considered the totality of the evidence, concludes that the recommended statutory penalty award, while appropriate, is somewhat excessive.

**The Magistrate Judge's application of the heightened arbitrary and capricious standard**

The magistrate judge correctly decided that the standard to be applied in this case is the heightened arbitrary and capricious standard that applies in cases of conflicts of interest. A

conflict of interest clearly exists because CNA, who effectively makes the decision to grant or deny benefits under its policy, also pays the benefits. The relevant inquiry now is whether the magistrate judge correctly applied the standard in this case. The Eleventh Circuit provided detailed guidance for the application of the heightened arbitrary and capricious standard in HCA Health Services of Georgia, Inc. v. Employers Health Insurance Co., 240 F.3d 982 (11th Cir. 2001).[1] Under this standard, the court must first determine whether the interpretation is "wrong." Id. at 993. According to the court, "'Wrong' is the label used by our precedent to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's interpretation." Id. at n. 23. However, in this case, there has been a bit of confusion as to when the correctness of the fiduciary's interpretation of the document is to be evaluated. The defendants argue, in their objections to the Report and Recommendation, that, once the court finds that an apparent

---

[1] This recent, thorough analysis and clear articulation of the process of reviewing a denial of benefits under ERISA finds support in Lee v. Blue Cross/Blue Shield of Alabama, 10 F.3d 1547, 1549-1450 (11th Cir. 1994)("A denial of benefits under an ERISA plan must be reviewed de novo 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.' Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989)("The Group Hospital and Major Medical Contract issued by Blue Cross to Associated Doctors contains language conferring discretionary authority upon Blue Cross to determine eligibility for benefits. . . . In light of this provision, we must review Blue Cross' denial of benefits to Lee under the arbitrary and capricious standard. Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556 (11th Cir.1990) (construing identical language and finding Blue Cross to be operating as a fiduciary), cert. denied, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991); see also Bruch, 489 U.S. at 111, 109 S.Ct. at 954; Jett v. Blue Cross & Blue Shield of Alabama, Inc., 890 F.2d 1137 (11th Cir.1989). Application of the arbitrary and capricious standard requires us to look only to the facts known to the administrator at the time the decision was made to deny Lee coverage. Jett, 890 F.2d at 1139. From this information, we first must determine whether Lee has proposed a sound interpretation of the plan to rival Blue Cross' interpretation. Brown, 898 F.2d at 1570. If we find that he has, we then must evaluate whether Blue Cross was arbitrary and capricious in adopting a different interpretation. Id. Nonetheless, 'a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary ... unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.' Id. at 1566-1567."). See also Buce v. Allianz Life Ins. Co., __ F.3d __, 2001 WL 357091, *3, *6 (11th Cir. 2001).

conflict of interest points to the heightened arbitrary and capricious review, the court should then review the fiduciary's interpretation *de novo* and determine whether it is right or wrong. The defendants claim that the magistrate judge in this case did not make such a determination.

In HCA Health, the Eleventh Circuit cited to two prior cases, Brown v. Blue Cross & Blue Shield, 898 F.2d 1556, 1566 (11th Cir. 1990), in which it stated that "[i]t is fundamental that the fiduciary's interpretation first must be 'wrong' from the perspective of *de novo* review before a reviewing court is concerned with the self-interest of the fiduciary," and Marecek v. BellSouth Telecommunications, Inc., 49 F.3d 702, 705 (11th Cir. 1995), in which it agreed with the fiduciary's interpretation of the plan, and, subsequently, refused to decide whether a conflict of interest was present before addressing the issue of whether the fiduciary correctly decided to deny benefits in the plaintiff's specific case. The HCA Health court noted that Maracek stands for the proposition that "[o]nly when the court disagrees with the decision does it look for a conflict and, when it finds such a conflict, it reconsiders the decision in light of this conflict." 240 F.3d at 993-994.

In the instant case, the magistrate judge incorporated the definition of "total disability," as written in the insurance policy, into his Report and Recommendation at page 9. Later, at pages 23-26 of the Report, he found that a conflict of interest existed because the entity who made the final benefits decisions was the same entity who paid the insurance benefits. Then, at pages 26-30, he analyzed defendant CNA's definition of "total disability" and found that, when expressed in documents repeatedly sent to the plaintiff in order to deny her claim, it differed substantially from the definition as written in the policy. He noted that one of CNA's representatives stated that no standards for "total disability" existed anywhere other than the insurance policy. Finally, he found that, because the interpretation of "total disability" upon

which CNA relied in order to deny the plaintiff's claim required the plaintiff to prove her physical condition beyond the requirements for "total disability" contained in the policy, the interpretation was "wrong." See Report, p. 30.

According to the Eleventh Circuit in HCA Health, "[i]f the court determines that the claims administrator's interpretation is 'wrong,' the court then proceeds to decide whether 'the claimant has proposed a 'reasonable' interpretation of the plan." 240 F.3d at 994. Although the magistrate judge in the instant case did not specifically find that "the plaintiff's interpretation of "total disability" is reasonable," he noted that the plaintiff's interpretation of the definition of "total disability" was the definition contained on the face of the policy, without the additional, unwritten medical evidentiary requirements imposed by the defendants' interpretation. See Report, p. 26. The magistrate judge then noted that "there were no other standards for determining total disability than the LTD insurance policy." Id. Finally, the judge agreed that "the policy does not require a claimant to produce the kind of evidence actually required by CNA . . . ."

The HCA Health court cautioned that even if the plaintiff provides a reasonable interpretation of the policy and the administrator/carrier's interpretation is "wrong," the plaintiff does not automatically prevail where the plan documents "explicitly grant the claims administrator discretion to interpret the plan." 240 F.3d at 994. According to the court, this is the point at which the arbitrary and capricious standard is applied. Id. In order to conclude that the administrator/carrier's interpretation is not only wrong, but also arbitrary and capricious, "the court must overcome the principle of trust law which states that the trustee's interpretation will not be disturbed if it is reasonable." Id. The HCA Health court has indicated that "the next step requires the court to determine whether the claims administrator's wrong interpretation is

4

nonetheless reasonable. If the court determines that the claims administrator's wrong interpretation is reasonable, then this wrong but reasonable interpretation is entitled to deference even though the claimant's interpretation is also reasonable." Id. The HCA Health opinion's detailed, step-by-step explanation of the analysis inserts the "conflict-of-interest" inquiry at this point. Id. Its importance, to the Eleventh Circuit, is in its prescription of the amount of deference to give a "reasonable-but-wrong" interpretation.[2] Id. If no conflict of interest is present, HCA Health requires a court to defer to the "reasonable-but-wrong" interpretation, and to find that the administrator, although wrong, was not "arbitrary and capricious." Id. If, however, a conflict of interest is present, the heightened arbitrary and capricious review shifts the burden "to the claims administrator to prove that its interpretation of the plan is not tainted by self-interest . . . [because it] benefits the class of participants and beneficiaries." Id. If the court finds that the administrator/carrier has failed to prove that the interpretation at issue benefits the entire class of beneficiaries and participants, the court may find that it is arbitrary, capricious, and not entitled to deference. Id. at 995.

The magistrate judge found that the interpretation was not only wrong, but also "unreasonable" because of the inordinate amount of additional medical evidence that it allowed the defendant to continually require from the plaintiff in order to continue processing her claim. See Report, p. 29. The magistrate judge, specifically, found that "[P]laintiff provided defendants with all requested documentation and test results, all of which read together established

---

[2] "The claims administrator's interpretation is not necessarily entitled to deference, however, if the claims administrator suffers from a conflict of interest. Therefore, the next step in the analysis requires the court to gauge the self-interest of the claims administrator. If no conflict of interest exists, then only arbitrary and capricious review applies and the claims administrator's wrong but reasonable decision will not be found arbitrary and capricious. . . . If a conflict of interest does exist, however, then heightened arbitrary and capricious review applies." Id. at 994.

5

plaintiff's disability. Despite being given precisely what they requested, defendants still decided that the proof was insufficient. However, it appears from the record before the undersigned that no amount of documentation, tests, or proof would have been sufficient for defendants." According to the Eleventh Circuit in <u>HCA Health</u>, he could have stopped here. Nevertheless, he also found that the conflict of interest existed, applied the heightened arbitrary and capricious review, and concluded that the administrator/carrier's interpretation of "total disability" was arbitrary and capricious. In so doing, he did not, however, explicitly shift the burden to the defendants to show that their interpretation of the plan "benefitted the class of participants and beneficiaries." And the defendants did not attempt to make such a showing, apparently assuming, instead, that the more deferential "arbitrary and capricious" standard would apply.

This court independently concludes that the defendants' denial was wrong, unreasonable, and arbitrary and capricious.

**The Statutory Penalty**

The provision for the statutory penalty at issue in this case is found at 29 U.S.C. § 1132(c)(1): "Any administrator . . . (B) who fails or refuses to comply with a request for any information which such said administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." In <u>Daughtrey v. Honeywell, Inc.</u>, 3 F.3d 1488, 1494 (11th Cir. 1993), the Eleventh Circuit held that the specific amount of the penalty applied in any given case is not only discretionary, but also unrelated to any prejudice or

6

monetary loss suffered by the claimant. The court found that the purpose of the statute was "to punish noncompliance with the employer or administrator's disclosure obligations and not to compensate the participant." Id. (citing Sandlin v. Iron Workers Dist. Council, 716 F. Supp. 571, 574 (N.D. Ala. 1988)). It also held that, while evidence of bad faith or lack thereof was relevant to the section 1132(c) inquiry, "the mere absence of bad faith no more exonerates the failure to provide a timely statement of benefits than does the absence of prejudice to the plan participant." Id. The court ended its statutory penalty discussion by reversing the district court's refusal to assess the statutory penalty and instructing the district court that, in light of the defendant's "unexplained delay of twelve months in providing a benefits statement . . . [t]he punitive purposes of section 1132(c) merit the imposition of some penalty."
Id. at 1494-1495.

In the instant case, the magistrate judge levied the full amount of $100 per day in response to defendant Quorum's behavior. Indeed, the defendants do not dispute that the plaintiff's attorney began sending them requests for the Plan document as early as August 7, 1997. Plaintiff's counsel sent, in all, five letters, each asking for "the plan providing for Long Term Disability Benefits," "a copy of . . . long term disability benefit plan," "a copy of the Plan which provides [long term disability] benefits," "long term disability benefit plan," "the plan which provides [long term disability] benefits." In her deposition, Katherine Buck, one of the defendants' representatives, stated that she "understood" each of these requests to indicate that the plaintiff's counsel was seeking "information on the long-term disability benefits," and continuously sent to him copies of the plaintiff's insurance policy and related documents. Buck claimed that it did not occur to her that when the plaintiff's counsel requested a "copy of . . . long term disability benefit **plan**," or "a copy of the **Plan which provides [long term disability]**

7

benefits," (emphasis added) that he meant the Plan document itself. It also, apparently, did not occur to defendant Quorum that because the plaintiff's attorney continued to write and to request the "Plan document," even though it continued to send to him the plaintiff's insurance policy, that it must be sending him the wrong information. Instead, Buck explained that she did not send the Plan document to the plaintiff's counsel because "[he] did not specifically ask for the plan that provides for **health benefits**." (emphasis added). This court is at a loss as to how plaintiff's counsel's repeated request for a "copy of the Plan which provides [long term disability] benefits,"-- especially in light of the fact that every time the defendant responded with a copy of the plaintiff's policy, he sent another letter asking for the same document-- could mean anything other than the actual Plan itself. The receipt of information that the administrator is statutorily required to produce should not hinge upon the participant's uttering a precise "Open Sesame" request. Nor should an administrator justify, through intentional obtuseness, its failure to produce information rightfully available to the participant. Furthermore, the defendant administrator seeks to justify its actions by claiming that it had previously produced the Plan document to the plaintiff's counsel in the context of other litigation, and, therefore, for purposes of the instant case, plaintiff's counsel already possessed the document. However, while the defendant would bind the plaintiff with its response in litigation to which she is not privy, it does not attempt to explain why, in light of its admitted prior experience in producing the Plan documents to the plaintiff's counsel in the other litigation, the knowledge of what plaintiff's counsel was actually requesting in those five letters should not be imputed to it as well.

    This court finds that defendant Quorum failed to provide the plaintiff with information that she, as a plan participant, possessed a statutory right to receive, in violation of 29 U.S.C. § 1132(c)(1)(B). Moreover, this court finds that the defendant's failure occurred in the context of

either intentional ignorance of the plaintiff's request or deliberate stonewalling. The magistrate judge found that both explanations smack of bad faith. However, considering the totality of the circumstances and applying its discretion, the court is reluctant to impose the full statutory penalty. The magistrate judge's award will, therefore, be reduced to $19,635, or $35 per day for each day that the plaintiff did not receive the requested information.

This  8  day of May 2001,

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE